CASE 52—PETITION ORDINARY—SEPTEMBER 21.

# McKrell vs. Metcalfe.

### APPEAL FROM MASON CIRCUIT COURT.

1. Pending the late war between the United States and the seceded States, it was as much the duty of the military commanders as of the civil authorities to see that the non-intercourse laws were enforced, and, especially, that nothing calculated to subserve the military purposes of the enemy should be carried within their lines.

2. Where the military authorities had reasonable ground to believe that horses and mules were about being carried into the lines of the enemy for sale, it was their duty to prevent the consummation of such intention.

J. K. SUMRALL, for appellant, cited 2 *Cranch*, 170; 1 *Curtis*, 465; 13 *Howard*, 115; 19 *Curtis*, 430; *Law. Wheat.*, 512; 8 *Cranch*, 110; 3 *Curtis*, 48; 19 *Curtis*, 426; 2 *Wheat.*, 119.

W. H. WADSWORTH, for appellee, cited 4 *Met.*, 385; 1 *Duvall*, 232, 182; 15 *Johns.*, 57; 13 *Howard*, 33; *Prize Cases*, 2 *Black*.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

At the time of the alleged trespasses a civil war existed between the government of the United States and a portion of its States, which had confederated under the style of the Confederate States of America.

Congress had enacted non-intercourse laws, and the President of the United States, by proclamation, had forbidden any commercial intercourse with the people of the seceded States, unless by special license in conformity to the rules and regulations prescribed by the Secretary of the Treasury, sanctioned by the President.

Vast armies were in the field, and each party were increasing their forces and developing their resources for an immense conflict. Sanguinary battles had already been fought, and important victories won.

It was as much the duty of the military commanders as of the civil authorities to see that the non-intercourse laws were not violated, and especially that nothing should be carried within the enemy's lines, by any person within the military

lines of the government, calculated to subserve the military purposes of the enemy or to increase their military power.

The cavalry was an important arm of the military service of the respective belligerents.

Whatever may have been the real intentions of the appellant, the proof leaves no room to doubt but that General Nelson, who was then in command of the United States forces, had reasonable grounds to apprehend and believe that appellant intended to carry the horses and mules he was then collecting within the lines of the enemy for sale. His own conduct fully authorized a well-grounded suspicion that such was his intention. Such being the case, it was not only the privilege, but the duty, of the military authorities to prevent the consummation of such intention; and, in the execution of this duty, no unnecessary violence seems to have been committed—at least such has been the finding of the jury, and the evidence does not authorize us to disturb this finding.

The instructions given fairly and perspicuously presented the law of the case as herein indicated; those refused are inconsistent with this view of the case, and were, therefore, properly refused.

Wherefore, the judgment is affirmed.